**IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| SANKOTY LODGE REAL ESTATE, LLC, KIM BLICKENSTAFF, KDB GROUP, LLC, SPRING BAY LAND DEVELOPMENT, LLC, SANKOTY LODGE, LLC, KIM BLICKENSTAFF REVOCABLE TRUST,<br>  Plaintiffs,<br><br>v.<br><br>MORTON COMMUNITY BANK, DWAYNE ATHERTON, PATRICIA ATHERTON, HERMAN BROTHERS POND MANAGEMENT, INC., HERMAN BROTHERS FISHERIES, INC., HERMAN BROTHERS CONSTRUCTION, GOOSE RANCH, LLC,<br>  Defendants. | Case No. 1:25-cv-01520-JEH-DJQ |

**Order**

Now before the Court are Defendant Dwayne and Patricia Atherton's Motion to Stay and Dismiss (D. 29), Defendant Morton Community Bank's Motion to Dismiss or Alternatively to Stay Pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure (D. 31), and The Herman Entities' Motion to Dismiss Plaintiffs' Complaint (D. 38).[1]  For the reasons set forth *infra*, the Athertons' Motion to Stay and Dismiss is GRANTED IN PART, Morton

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

1

Community Bank's Motion to Dismiss or Alternatively to Stay is GRANTED IN PART, and the Herman entities' Motion to Dismiss is MOOT.

## I

On December 24, 2025, Plaintiffs Sankoty Lodge Real Estate, LLC, Kim Blickenstaff, KDB Group, LLC, Spring Bay Land Development, LLC, Sankoty Lodge, LLC, and Kim Blickenstaff Revocable Trust filed their Complaint (D. 1) against Defendants Morton Community Bank (Morton Community Bank), Dwayne Atherton, Patricia Atherton, Herman Brothers Pond Management, Inc., Herman Brothers Fisheries, Inc., Herman Brothers Construction, and Goose Ranch, LLC. The Plaintiffs state the Court has jurisdiction pursuant to 28 U.S.C. § 1331 based on provisions of the Racketeer Influenced and Corrupt Organizations Act of the Organized Crime Control Act of 1971 (RICO), 18 U.S.C. § 1964, and supplemental jurisdiction over the Plaintiffs' common law claims under 28 U.S.C. § 1367(a). They state this action arises from a multiyear scheme by a bank, its borrowers, and affiliated vendors to fraudulently induce the Plaintiffs to acquire Spring Bay Materials at an inflated price, and, thereafter, to divert funds through false invoices, misrepresentations, and various schemes and concealments, to steal physical assets, and continue to try to extort money.

Specifically[2], the Plaintiffs allege that Defendant Morton Community Bank was carrying approximately \$5.3-5.4 million in nonperforming loans it had made to the Athertons, including approximately \$3.6 million associated with the Spring Bay Materials Company gravel operation and roughly \$1.7 million in other business debt that was unrelated to Spring Bay Materials. The loans were in default, and most of the fault was shared by Morton Community Bank and the

---

[2] Whether in the context of Federal Rule of Civil Procedure 12(b)(1) or (b)(6), a court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (internal citation omitted).

Athertons.  The Athertons were bad business people who could not be trusted; they started many businesses and, without exception, they all failed.  Spring Bay Materials Company, a gravel pit, was started by the Athertons and their partner, Clay Moushon, in or about 2012.  They now claim, and told Plaintiff Blickenstaff, that their plan was to provide gravel for the construction of the new Caterpillar corporate headquarters in Peoria, and when Caterpillar did not go through with its plans and instead later moved to Texas, the Athertons had an essentially worthless gravel pit business as of 2019.  Defendant Morton Community Bank, with the knowing assistance of the Athertons and "the Hermans,"[3] worked out a scheme to unload the Athertons' bad loans by duping Plaintiff Blickenstaff.

In 2018, Blickenstaff returned to his hometown area of Peoria, Spring Bay, and Peoria Heights following his retirement, and, as of 2019, had invested approximately $40 million of his own money in the Peoria area.  He borrowed about $5,329,750 from Morton Community Bank to invest in the various projects. Based upon their knowledge of all of Blickenstaff's charitable and philanthropic acts, Morton Community Bank and the Athertons came up with a plan.  Dwayne created a fictitious story about Caterpillar and its alleged commitment to buy huge amounts of sand and gravel for its planned new headquarters in downtown Peoria that it allegedly reneged on, and the story gave Dwayne an opportunity to discuss his plans for his property.  It also made the Athertons appear to be sympathetic victims of the whimsy of Caterpillar management, and it allowed the Athertons and Morton Community Bank to hide the fact that the Athertons were not the savvy, successful businesspeople they held themselves out to be and as the Bank represented them to be.  Morton Community Bank and the Athertons kept

---

[3] The Court refers to the Hermans in the various ways the Plaintiffs do in their Complaint given the Herman Entities' footnote in their Motion to Dismiss (D. 39) that the Complaint does not define the term "Hermans." Def. Herman Entities' Mot. to Dismiss (D. 39 at ECF p. 3 fn. 1).

Moushon and Blickenstaff apart because Moushon knew the truth about the Athertons and both the real and fabricated versions of the gravel pit "saga." When Moushon's interest was finally revealed, Morton Community Bank and the Athertons blamed much of Spring Bay Materials' failings on him.

Dwayne finagled an introduction with Blickenstaff, the latter's interest in conservation and outdoor recreation, particularly flyfishing, known because he had been extensively featured in the local media. Using his awareness of Blickenstaff's interest in fishing as an introduction, Dwayne invited Blickenstaff to go fishing at the Herman Brothers' resort, Giant Goose Ranch, located in nearby Canton, Illinois. Dwayne introduced Blickenstaff to Nate Herman, one of the owners of Goose Ranch resort and also one of the owners of Defendant Herman Brothers Pond Management along with various other Herman Brothers businesses. Later, over the course of several weeks, Blickenstaff, Dwayne, and often Nate Herman, fished together. During one of those fishing trips, Nate expressed the idea that, if a river was created on the Sankoty Lakes property that Dwayne owned, it could be a huge success and would offer the excitement of flyfishing for trout in the Midwest; Nate was interested in being hired to create the river he was envisioning.

Dwayne explained to Plaintiff Blickenstaff the Caterpillar Peoria project story, and he suggested to Blickenstaff, while the two were fishing on Dwayne's gravel pit property, that his property could be repurposed as an outdoor recreation facility for fishing, hunting, camping, and other outdoor activities. After further discussions between the two in the summer of 2019, "the Hermans'" preparation of a pro forma in August 2019 that they used in a presentation to Blickenstaff, and Morton Community Bank's offer to sell Spring Bay Materials and Spring Bay Development to Blickenstaff, Blickenstaff agreed to buy Spring Bay Materials by taking out a loan with Defendant Morton Community Bank for $5.3

4

million, thereby acquiring the gravel pit, all of its equipment, and the nearby property now earmarked for development as a family resort. In doing so, Blickenstaff also paid off the Athertons' loan on Spring Bay Materials as well as all their other bad loans Morton Community Bank held. The price of $5.3 million included $1.7 in goodwill which was nothing more than the sum total of the Athertons' bad debt for other failed businesses and projects held by the Bank. The Bank failed to disclose to Blickenstaff: Patricia was separated from a different local bank for misappropriation of funds; Dwayne's complete failure as a businessman; its inflation of the loan on the gravel pit so that it would cover both the amount due on the gravel pit as well as the other unrelated business loans Dwayne had obtained from the Bank; its December 2018 appraisal of the gravel pit for $3.26 million; and its addition of $1.7 million in goodwill to the value of the gravel pit which had no prospects and no future as a gravel pit and which was arrived at because it was sufficient to cover the Athertons' other bad loans. Defendant Morton Community Bank represented to Plaintiff Blickenstaff and his agents and representatives, both orally and in writing, that the Athertons were great people, hardworking, successful, trustworthy, etcetera.

Blickenstaff used his company, Plaintiff Sankoty Lodge, LLC, to purchase the Sankoty Lakes project, and, after it was acquired, it was transferred to another business Blickenstaff owned – Plaintiff Sankoty Lodge Real Estate, LLC. Morton Community Bank insisted upon additional security in the form of a guarantee by Blickenstaff's personal trust. The Sankoty Lodge loan closed in September 2019. Construction started in November 2019. Dwayne became an employee of Plaintiff KDB Group and was named Construction Manager. He assembled a crew and oversaw their work. Defendant Herman Brothers Construction Company, because of their extensive experience in construction and in lake and river

management and their relationship with Dwayne, were hired as consultants at the request of Dwayne.

Soon after work began, the local construction union learned of the project and threatened to picket the work and shut it down; to avoid the labor problem, Dwayne suggested to KDB Group that Herman Brothers Construction take over construction of the resort, and the change was made in January 2020. KDB Group paid the "Herman Brothers" a General Contractor fee and they also billed KDB for other expenses. KDB would then pay both the General Contractor fee and the bills and "Herman Brothers" would take care of the payroll. In September 2020, Jared Plattner, a "Herman Brothers" employee, mistakenly sent KDB records that revealed: 1) Dwayne was not only receiving his KDB Group payroll check as an employee of KDB, but he was also receiving secret, undisclosed cash payments that "the Hermans" included as an undisclosed item in their single aggregate bill to Plaintiff KDB Group; and 2) the "Herman Brothers" were paying their construction workers in cash and not paying the workers' compensation insurance.

In March 2021, the Pavillion at the resort was completed and opened later that summer. In late summer 2021, KDB Group brought in Columbia Hospitality to run the resort, and the latter took over management of all employees. Since construction was completed, the construction crew was laid off in August 2021. In September 2021, Columbia offered Dwayne a position as Grounds Manager and Dwayne demanded that Columbia hire the "Herman Brothers" as well. Columbia declined and Dwayne declined Columbia's employment offer. Thereafter, Dwayne threatened to burn Sankoty down. Plaintiff KDB Group then eliminated the Construction Manager position as construction had ended, ending Dwayne's employment with KDB Group. The resort was listed for sale in June 2023, and it

was eventually leased with an option to purchase on April 6, 2025 to Sand Springs Retreat, LLC. Sand Springs opened the resort in May 2025.

Dwayne and other members of his family own the four parcels of land that border the Sankoty property that Blickenstaff purchased. Dwayne and others have used this proximity to try to disrupt Sankoty's operations and have, for example: placed unsightly equipment on the beach adjoining Sankoty resort property; dumped land materials into the lake; shot fireworks over the guests at the restaurant; and burned massive bonfires on the hillside. Dwayne started a campaign to try to force the Plaintiffs to pay him to go away; he and Patricia filed a lawsuit in October 2022 in state court and are now trying to use that suit, coupled with other actions to coerce a settlement from the Plaintiffs. A couple of those actions being that Dwayne and "the Hermans" completed construction knowing that the work was being completed on Dwayne's property, but Dwayne held that deceit in his pocket until he decided to reveal the true property line in October 2021, and following Plaintiffs' former counsel complaining to the Village of Spring Bay about the junk on Dwayne's property line, Dwayne and his accomplices dumped additional junk on April 13, 2025.

The Plaintiffs' Count I for tortious interference with business expectancy of Sankoty Lodge is against Defendants Dwayne and Patricia Atherton, Count II for tortious interference with business contract of Sankoty Lodge is against the Athertons, Count III for private nuisance of Sankoty Lodge is against the Athertons, Count IV for fraud is against the Athertons, Defendant Morton Community Bank, and the Defendant "Herman Brothers," Count V for civil theft and unjust enrichment is against Dwayne Atherton, and Count VII[4] Civil RICO is against Morton Community Bank, the Athertons, and the "Herman Entities."

---

[4] There is no Count VI in the Complaint.

## II

Both the Athertons and Morton Community Bank first argue that this Court should abstain from exercising jurisdiction pursuant to the *Colorado River* abstention doctrine. That doctrine provides "a federal court may stay or dismiss a suit in federal court when a concurrent state court case is underway[.]" *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014) (citing *Colo. River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817-18 (1976)). The *Colorado River* doctrine's primary purpose is to conserve both state and federal judicial resources and to prevent inconsistent results. *Id.* The doctrine requires a court to engage in a two-part analysis: first, the court must determine whether the state and federal court actions are parallel; and second, whether the necessary exceptional circumstances exist to support a stay or dismissal. *Loughran v. Wells Fargo Bank, N.A.*, 2 F.4th 640, 647 (7th Cir. 2021). If the actions are not parallel, the doctrine does not apply and the court need not proceed to the second part of the analysis. *Freed*, 756 F.3d at 1018.

## A

On October 17, 2022, Dwayne and Patricia Atherton filed a lawsuit in the Circuit Court of the Eleventh Judicial Circuit of Illinois, Woodford County, *Atherton v. Sankoty Lodge LLC*, Case No. 2022LA15 (Ill. Cir. Ct.), against Sankoty Lodge, LLC, Sankoty Lodge Real Estate, LLC, Greg Birkland, and Kim Blickenstaff (Woodford County case). That case remains pending at this time. *See Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012) (explaining that a court may take judicial notice of facts that are not subject to reasonable dispute and are capable of accurate and ready determination through sources whose accuracy cannot be questioned and recognizing a public court record as the proper subject of judicial notice).[5] In

---

[5] The Athertons attached a copy of their Woodford County complaint (D. 30-1) to their Motion to Dismiss.

their Woodford County complaint (D. 30-1), the Athertons stated the purpose of that complaint was "to seek redress for the significant financial losses sustained by" Dwayne "as a result of the conduct of" Kim Blickenstaff and Greg Birkland. Def. Atherton Mot. to Dismiss Ex. 1 (D. 30-1 at ECF p. 1).  The Woodford County complaint's allegations pertained to the Athertons' ownership of real property in Spring Bay, Illinois.

The Athertons alleged Dwayne's previous membership in and ownership of Spring Bay Materials, LLC, Dwayne's awareness at the time he met Blickenstaff in the summer of 2019 of the latter's wealth and engagement in development projects in the Peoria, Illinois area, Dwayne's invitation to Blickenstaff to go fishing at Giant Goose Ranch in Canton, Illinois where Blickenstaff was introduced to Nate Herman, and Dwayne's revelation to Blickenstaff of his dire financial situation, due in part to the Spring Bay Materials sand and gravel business.  The Woodford County complaint further alleged that Blickenstaff took advantage of Dwayne's financial situation in order to exploit his idea for the development of the Spring Bay Materials property by paying off Dwayne's bank debt, acquiring the Spring Bay Materials property, and promising Dwayne he would be a partner in the recreation facility business if he assisted in the planning, design, and construction of the facility.  The Athertons alleged that at the request of Birkland, for the purpose of avoiding potential workers' compensation liability, a majority of the laborers who worked on the Sankoty Lakes resort project were paid in cash through Dwayne; Birkland establish a system whereby Defendant Sankoty Lodge, LLC would pay Herman Brothers Pond Management sufficient amounts to cover periodic wages to the laborers, Herman Brothers Pond Management would then write a check to Dwayne for the total amount of the cash wages, and Dwayne would cash the check and distribute cash wages to the laborers.  The Athertons also alleged after Dwayne devoted virtually all of this time, attention, and energy

9

to the design and construction of the recreation facility for more than two years, during which time he was introduced repeatedly as Blickenstaff's "partner", Dwayne was fired by Birkland once the Sankoty Lakes resort was ready to open and the defendants no longer needed him. Additionally, the Athertons alleged defendant Sankoty Lodge provided insurance coverage for Dwayne's primary vehicle – a Ford pickup truck; during construction of the project, Birkland told Dwayne if Dwayne would sign over title to his truck, Sankoty Lodge would buy him a new truck, Dwayne accepted the offer, and, in August 2022 when efforts to resolve the parties' disputes broke down, Sankoty Lodge ceased paying for insurance and would not permit Dwayne to insure the truck because he was not the registered owner. The Athertons alleged Dwayne realized in September 2021, upon his firing, that he had been the victim of a fraudulent scheme carried out by a successful California businessman masquerading as a philanthropist. The Woodford County complaint included counts for fraud against Blickenstaff, a declaratory judgment – oral partnership by Dwayne against all of the defendants, promissory estoppel by Dwayne against all defendants except Birkland, quantum meruit by the Athertons against all defendants except Birkland, intentional trespass by the Athertons against Sankoty Lodge and Sankoty Lodge Real Estate, trespass (negligence) by the Athertons against Sankoty Lodge and Sankoty Lodge Real Estate, and breach of contract by Dwayne against Sankoty Lodge. In addition to declaratory judgment, the Athertons sought damages and costs of the action.

**B**

**1**

"Two suits are parallel for *Colorado River* purposes when substantially the same parties are contemporaneously litigating substantially the same issues." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 498 (7th Cir. 2011). Precise symmetry is unnecessary. *Id*. "A court should examine whether the suits involve the same

10

parties, arise out of the same facts and raise similar factual and legal issues." *Id.* Here, Defendants Dwayne and Patricia Atherton argue this case and their Woodford County case are "plainly parallel," emphasizing the Plaintiffs' reference to that case throughout the Complaint in this case and the Plaintiffs' identification of that case as the "Original Lawsuit." Def. Atherton Mot. to Dismiss (D. 30 at ECF p. 4). They argue both cases relate to discussions and conversations between Dwayne and Blickenstaff in 2019 regarding Blickenstaff's acquisition of the Spring Bay property and what representations were made between Dwayne and Blickenstaff relating to that transaction. They further argue that crediting Dwayne's version of the facts in the state court litigation would severely undermine, if not outright eliminate, a core factual premise of Blickenstaff's RICO claim, namely, that Dwayne misrepresented the real reason for his financial situation and misled Blickenstaff. Defendant Morton Community Bank likewise argues the matters are parallel where both concern the Athertons' and Plaintiffs' relationship in the acquisition, development, and operation of the Sankoty resort property.

This case and the Woodford County case are undeniably parallel actions, which the allegations of each complaint, as set forth above, illustrate. Substantially the same parties (Athertons, Blickenstaff, Sankoty Lodge Real Estate, LLC, Sankoty Lodge, LLC,) are litigating substantially the same issues (who wronged who in relation to the Sankoty resort property, who lied about what, etcetera). The Plaintiffs here argue that of the thirteen parties, only one is present in the state action – Kim Blickenstaff. The Plaintiffs further argue the "two universes of claims" do not overlap where none of the federal complaint counts can be resolved by resolving the partnership question in the Woodford County case, and none of the state counts reaches the mail and wire fraud scheme or the continuing extortion campaign that are the core of the federal case. In other words, the

11

Plaintiffs insist on precise formal symmetry in spite of the fact that such symmetry is not required and the "parallel nature of the actions cannot be destroyed by simply tacking on a few more defendants, neither can it be dispelled by repackaging the same issue under different causes of action." *Freed*, 756 F.3d at 1020 (quoting *Clark v. Lacy*, 376 F.3d 682, 686-87 (7th Cir. 2004)). The fact of the matter is that the actions share central issues, hinging on the same operative facts. Both actions revolve around the development of the Sankoty resort property, with the discrete disputes amounting to a he said, he said. The Plaintiffs' reliance upon inclusion of a RICO claim here is misplaced; to now state a RICO claim is a litigation choice (some of) the Plaintiffs made by not including it as a counterclaim in the Woodford County case. It is of no moment that Section 5/2-608 of Chapter 735 of the Illinois Compiled Statutes provides for permissive rather than compulsory counterclaims - Section 5/2-608 provided the Plaintiffs an opportunity to include a RICO claim, one not taken. 735 ILL. COMP. STAT. 5/2-608(a) ("Any claim by one or more defendants against one or more plaintiffs . . . whether in the nature of setoff, recoupment, cross claim or otherwise, and whether in tort or contract, for liquidated or unliquidated damages, or for other relief, *may* be pleaded as a cross claim in any action, and when so pleaded shall be called a counterclaim.") (emphasis added); *see Antosh v. Vill. of Mount Pleasant*, 99 F.4th 989, 994 (7th Cir. 2024) (finding "lopsidedness" of the two actions not fatal to a finding that the actions were parallel where the fact that the federal and state suits involved different issues was entirely a product of the plaintiffs' own litigation choices, and one claim could have been raised years before either in state court or in federal court).

**2**

The Seventh Circuit recently explained that courts have developed a checklist of ten common considerations to inform the second inquiry of whether the necessary exceptional circumstances exist:

1. Whether the case concerns rights in property, and if so, whether the state has assumed jurisdiction over that property;
2. The inconvenience of the federal forum;
3. The desirability of consolidating litigation in one place—that is, the value in avoiding "piecemeal" litigation;
4. The order in which jurisdiction was obtained in the concurrent fora;
5. The source of governing law—federal or state;
6. The adequacy of the state court action to protect the federal plaintiffs' rights;
7. The relative progress of the state and federal proceedings;
8. The presence or absence of concurrent jurisdiction;
9. The availability of removal; and
10. Whether the federal action is vexatious or contrived.

*Loughran*, 2 F.4th at 647 (citing *DePuy Synthes Sales, Inc. v. OrthoLA, Inc.*, 953 F.3d 469, 477 (7th Cir. 2020)).   However, the checklist is not a "straightjacket," and "[d]ifferent considerations may be more pertinent to some cases, and one or more of these factors will be irrelevant in other cases." *Id.*  Here, of course, the Athertons and Morton Community Bank argue the factors, on the whole, support abstention while the Plaintiffs argue the factors favor the exercise of jurisdiction or are otherwise neutral.

With regard to the first factor, the parties are all over the place:  the Plaintiffs say the factor is neutral and the state court has not assumed jurisdiction over property while the Atherton Defendants and Defendant Morton Community Bank say the state court has assumed jurisdiction over property, though for different reasons (quiet title and storage lien foreclosure versus Dwayne's claimed one-third

ownership interest in Sankoty Resort). Given the parties' conflicting positions, the Court considers this factor neutral.

The parties agree to the neutrality of the second factor.

The third factor favors abstention given the striking overlap between the state and federal cases.

The fourth factor favors abstention given the lapse of more three years between when the Athertons filed their Woodford County case (October 2022) and the Plaintiffs filed their federal case (December 2025) here.

The fifth factor favors abstention as all but one claim (based on each original complaint, 13 claims total between the two cases), the *last* claim pursuant to RICO in the *second*-filed case, are governed by Illinois law.

The sixth factor favors abstention given, yet again, the overlap between the state and federal cases and the fact that state courts have concurrent jurisdiction over RICO claims. *See Tafflin v. Levitt*, 493 U.S. 455, 460 (1990) (holding that state courts retain their presumptive authority to adjudicate civil RICO claims). Although the Plaintiffs argue this factor decisively favors retention because several of the parties here are not parties in the Woodford County case, no one has provided this Court with the current iteration of parties in the state court case, and the original complaint in Woodford County included defendants there that appear as plaintiffs here (Sankoty Lodge, LLC, Sankoty Lodge Real Estate, LLC, Kim Blickenstaff). In any event, "[The Plaintiffs'] substantial rights are protected by granting a stay because it allows [them] the possibility to revive [their] federal litigation depending on the outcome in state court or in the unlikely event that the state court action is inadequate." *Freed*, 756 F.3d at 1023.

The seventh factor unquestionably favors abstention where the Woodford County case has had a three-years' head start and so discovery is, as the Athertons put it, "well underway." Def. Atherton Mot. to Dismiss (D. 30 at ECF p. 5).

14

As for the eighth factor, concurrent jurisdiction exists for reasons already stated, which tips the scale toward rather than away from abstention under these particular circumstances.

Neither the Athertons nor Morton Community Bank address the ninth factor, and the Plaintiffs say it is neutral, so the Court considers it no further.

Finally, the tenth factor certainly favors abstention. Given the overlap between the original parties in each case, the same operative facts between the two cases, and the inclusion of just one federal claim more than three years after the parties' litigation began in state court - a claim susceptible to resolution in state court (had it been made there) - instinctively, this case is vexatious at best and contrived at worst.

In sum, the checklist overwhelmingly favors abstention in this case, and the Court will accordingly stay this case pending resolution of the Woodford County case. When it comes to federal court abstention, the "default rule is staying put[,]" and abstention is "the exception, not the rule." *Wildberry Condo. Ass'n v. Travelers Indemn. Co. of Am.*, 522 F. Supp. 3d 432, 443 (N.D. Ill. 2021); *Antosh*, 99 F.4th at 993. Nevertheless, the necessary exceptional circumstances exist here to support a stay. The Court need not address the parties' additional arguments regarding failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and the Plaintiffs' RICO and fraud claims as time-barred. The Defendant Herman Entities' Motion to Dismiss is accordingly moot. Though the Herman Entities do not request abstention, the reasons for abstention apply equally to those Defendants in spite of the fact that they were not named as defendants in the Athertons' Woodford County case; the Plaintiffs' Count IV for fraud and Count VII for a CIVIL RICO violation were brought against Defendant Morton Community Bank, the Athertons, and the Herman Entities.

## III

For the reasons set forth *supra*, Defendant Dwayne and Patricia Atherton's Motion to Stay and Dismiss (D. 29) is GRANTED IN PART AND MOOT IN PART, Defendant Morton Community Bank's Motion to Dismiss or Alternatively to Stay Pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure (D. 31) is GRANTED IN PART AND MOOT IN PART, and the Herman Entities' Motion to Dismiss Plaintiffs' Complaint (D. 38) is MOOT.  The Athertons' and Morton Community Bank's Motions are granted to the extent this case is STAYED pending resolution of the proceedings in *Atherton v. Sankoty Lodge LLC*, Case No. 2022LA15 (Ill. Cir. Ct.), and their Motions are MOOT to the extent they seek dismissal of certain claims in the Plaintiffs' Complaint (D. 1).

This matter is STAYED pursuant to *Colorado River*.  The Clerk is directed to administratively close this case.  The parties are directed to inform the Court within 14 days, in writing on the docket, after the conclusion of the parallel Woodford County case.

Should a party file a motion for reconsideration which is subsequently denied by the Court, the party who filed the motion will be responsible for the attorney's fees of the opposing party related to their response to the motion for reconsideration.

*It is so ordered.*

Entered on August 7, 2026

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE

16